The next case is United States v. Sandford My name is Robert Wood. I appear on behalf of the appellant, James Edward Sandford. This is the second time we are here on this matter. The first matter was 18-288 in which this court issued a remand order. The remand language on page 2 ordered the district court to, quote, re-sentence the defendant. And then later in the summary order, the court said, used language which said to re-sentence the defendant if it found that the points, the problem was that there was a difference in the points. The current history was 16 rather than 18. And if it found that that made a difference, to re-sentence him accordingly. And the district court interpreted the order as meaning that it could just write a decision and not actually engage in a re-sentencing proceeding with the defendant. And simply wrote a decision after considering the transcript of the sentencing, the original sentencing, and ordering an updated pre-sentence report. Which, in this case, as outlined in page 10 of my brief, the defendant never had a chance to look at while he was in prison down in West Virginia because of the conditions down there. And also, he had written several letters to the court, which the court specifically said it would not consider because it was his original intention to sentence him to 13 years, which was a substantial increase in the suggested guideline range in the first place. So why wasn't the district court entitled to rely on the decretal language in our summary order? I'm sorry, Judge. I'm having a little trouble hearing you. Why wasn't the district court entitled to rely on the decretal language in the summary order? Which, I mean, it was clear, right? It said, if you need to, re-sentence. And why couldn't it rely on that as the orders it was receiving, essentially? Well, that exactly is the issue, Judge. And because it's the law, since Pepper v. United States or the Supreme Court in this court's holdings, including United States v. Bryson, which is outlined and cited on page 5 of my brief. In Bryson, this court remanded with specific instructions to sentence the defendant within the guideline range of 31. And it can't get more explicit than that. It said specifically, re-sentence this defendant within guideline range 31 and send it back to the district court. It also found the defendant has not shown any post-sentencing rehabilitation here. Re-sentence this defendant to guideline 31. It got remanded to the district court. When it got to the district court, the defendant offered post-sentencing rehabilitation since the remand. And the district court said, I have clear instructions here from the Court of Appeals to re-sentence this defendant in accordance with guideline range 31. And that's what I'm doing. I'm not considering post-sentencing rehabilitation. And the court did that. It was an appeal. This court reversed that sentence and said it is always the job of the district court to sentence the duty of the district court to sentence the defendant as he stands before the court on the day he is not sentenced. Isn't there an exception to that? And that is when the mandate is specific and remands for a specific purpose. I'm having a little trouble understanding you. Yeah. I agree that, in general, on remand, on a re-sentencing, a district court should look at all the circumstances as they exist then. But isn't there an exception to that rule when the mandate from the appellate court is very specific, as it is here, if the district court concludes that a different sentence is appropriate? Well, the only one that I'm aware of, Judge, is in the Shabazz case, which he cited by the government. And in Shabazz, there was a mandatory minimum, 15-year sentence. So if you got a mandatory minimum and the defendant had not served his 15 years, and so you have no choice. But Pepper specifically says that the court did not mean to preclude courts of appeals from issuing remand orders that may render evidence of post-sentencing rehabilitation irrelevant. It's possible that that can be done. Well, the court must always consider all the cases that I've cited, Judge, have always said it. And it's not just Reisman. It's the Weber case. What about that language from Pepper that I just quoted to you? Okay, you just quoted from Pepper. Yeah, and the Shabazz post-Pepper. And, yes, there can be exceptions, but they're very rare exceptions. Well, can I suggest Crosby? I mean, this was – I read this to be – let me just finish the question here, and I'll try to make it brief. I read this decretal language as a Crosby remand, and we have held – I think it was in a case like Farrell, I think is the name – where we held that on a Crosby remand, the district court is to consider the facts as they existed at the original sentencing, and it's not error to disregard evidence of post-sentencing rehabilitation. So if we read the decretal language to be a Crosby remand, which is what I thought it was, then it would be following – the district court would be following Farrell in saying, I'm looking at the state of the evidence as it stood at the time of the original sentence. In other words, it was something like us outsourcing the harmless error analysis, as we did in all of those Crosby remands, to the district court to say, well, we're not going to try to guess whether you would have done something differently and whether this was harmless error. We're simply going to ask you, district court, was this harmless error? Would you have done something differently had you known? And if you say no, it's over. And if you say yes, then we're simply not requiring you to come back to us before we authorize you to proceed with the sentence – resentencing. Isn't that what this is, a Crosby remand? No, I don't believe so, Judge. No. And I'm not familiar with – frankly, I'm not familiar with Crosby. So every single case that was pending on direct appeal after Booker came down, every single sentencing appeal was sent back pursuant to Crosby, pursuant to what we call a Jacobson remand, which a lot of us now call Crosby remands because there were hundreds upon hundreds of them. Okay, well, I don't believe it is a Crosby remand at all. I think it's more – it's reconsideration of the sentence. What occurred here – I'm familiar and I've heard of the case of Crosby and I've spent a lot of time since I've heard of that case. But I don't think this is anywhere near what Crosby – or like what Crosby – I know the government didn't cite Crosby in their responding papers. But I think the issue here is what happened here was the court decided that there needed to be a resentencing or reconsideration of the sentence. And that's what they did. They sent it back for that purpose. And I don't believe that's what the situation was in Crosby. And I don't think this could be considered a Crosby remand. So I think what the court had to do at that point, once the case got sent back, it certainly was not sent back with instructions to disregard any input from the defendant. And it certainly would not have been fair if the court had engaged in a full resentencing procedure. And it would not have been considered a faulty procedure if the court would have engaged in a full resentencing of the defendant and considered what it is. I think this is more of a Bryson resentencing and a Weber or a Guglieri resentencing. So I believe that the government's – what they have argued is that the exception – and what they've argued in their response brief is that the exception in Shabazz, where there was a man for a minimum of 15 years. And so that case, as I said, is distinguishable. And, in fact, there have been similar cases to Shabazz where – such as the Villanueva case, which I cite on page 4 of my reply brief, where the court reversed the Connecticut court, which had found an absorption of the ACCA in the unconstitutional and had resentenced the defendant to time served. The government had asked that the court reimpose a 21-year sentence. The court – this court refused to do that and remained in a resentencing because the defendant had already served more than 15 years of the man – the man for a minimum in that case was 15 years. The defendant had served more than 15 years. It refused to reimpose the 21-year sentences, remanded it back to the district court for full resentencing because there could be intervening circumstances which would change the court's decision on what the sentence should be. Mr. Wood, you've reserved two minutes of rebuttal time. Do you want to use those now or would you like to – I'll reserve. Thank you. Good morning. May it please the Court, my name is Tiffany Lee and I represent the United States. Your Honors, this is – this court's decree vote could not be more clear. It was not a remand for a plenary sentencing. It was simply an order for the district court to consider the fact that what the correct criminal history score was, even though it did not impact on the criminal history category. And this was an error that did not affect the guidelines range at the end of the day. Exactly. Could we have done this if it had affected the guidelines range? I mean, if we – assuming that you're correct, that what was done here is essentially a Crosby-style remand. I mean, we didn't cite Crosby. I think your colleague is correct on that point, but that seems to be the thrust of your argument. Could we have done something like this if there had been an error that would have affected the guidelines range? As my colleague suggested, could we outsource the harmless error analysis and any sentencing appeal? I think this Court has made clear where the error possibly undoes the math is the way I consider it. You know, then it has to be plenary because everything has changed. If his criminal history category is different, then procedurally the district court started off from the wrong number. It has to be plenary. Is that what you – do you – Oh, I meant like the resentencing would undo the calculus of what the – of what you were starting out from. Well, let's assume we get to a different guideline range. Are you saying that where there's a different guideline range, the resentencing is plenary always? I think this Court can always correct in terms of the language vis-à-vis the exception in Pepper in terms of – I guess I just want to make sure maybe we're using the same terminology. So when I think of a plenary resentencing, I think that you can start from scratch. I think of a plenary resentencing as full. That means everyone can relitigate the offense level, the enhancements, the criminal history score, all the aggravating and mitigating factors. It's just de novo. Everyone starts. And nothing that the district court did previously is binding on it any further. I think when I use the word limited resentencing, it's that everything under quintieri that we've sent back to get redone gets redone, the things we've specified. But the things that were litigated or could have been litigated before cannot now be relitigated. And that the only other things that get done, other than the ones we specified, are things that could not have come up earlier, such as post-sentencing rehabilitation that happens since the original sentencing. So new facts that we can't blame anyone for having raised earlier can now be raised. So that's at least how I understand or I'm using the terms plenary and limited. So maybe you could tell us in that context. More limited would be appropriate as opposed to plenary. And plenary comes into play as counsel raised in cases where the complete package is undone, where a conviction is undone. And Mr. Wood mentioned a case where there was an APA violation which would take out a conviction. So maybe with Judge Livingston's question, if we had concluded that a different sentencing guideline range applied, in your view, are we limited in what we could do? Could we order plenary? Could we order limited? Or can we also choose from our options what I'll call a Crosby? I think you could choose from your options in terms of... All three? I guess it depends on the nature of the sentencing error, I guess. Let's just assume new guidelines range. It goes from 51 to 63. It goes down to 41 to 51, hypothetically. Okay, so the order of sentencing is based on the new guideline range. You know, you could consider... Order the district court to consider post-sentence rehabilitation. And you could basically... Any issues with respect to what the new... What factual issues have all been determined because this court has already ordered a specific range to which. So, maybe not plenary, but the other options are available to this court. Vis-a-vis the Crosby you get, I think that would be an order to the district court to say, given this new correct guideline range, would you still sentence... Would you still consider imposing the same sentence that you did before? But that's not what we have here. What we have here is something that did not... Unpackaged the original sentencing guidelines in any way, shape, or form. What we have here is a district court judge who specifically stated, you know, I am not going to change my sentence one item from what I did before. Even in consideration now that the score is 18, he's going to be 16. His criminal history category score was remained unchanged. His total events category remained unchanged. And the district court spelled out the 35938 factors. And said, you know, given his past criminal history, given what he was involved in, you know, I believe I'm following this court's approval to the work. I, you know, met the condition, if, and therefore, I don't have to proceed any further because the sentence remains the same. So specifically for this case, I want to encourage this court to reform the sentence. The language of the summary order did not cite Kowalski. It did cite a case called United States v. Kramer. In which, in that case,    the court simply affirmed the sentence after finding that there was harmless error. And what happened in Kramer, there was a small miscalculation that clearly would not affect the sentence in that case. And the court simply could have done that in this case. They could have said, it's a small miscalculation, 16 points, 18 points, what's the difference? And they could have said, we affirm the sentence. But the panel did not know what the district judge would make. The panel did not know what the district court would make of the error. And that's why it was sent back to see whether it was important to the district court. That's why it was sent back. But it wasn't sent back for the district court to do a new sentencing. And I guess that's where we diverge. Because once it gets sent back, it's our position that the court does have to, at that point, consider the circumstances. As all these second-serving court cases... I'm sorry. I'm sorry, counsel. You're saying it has to. That would seem to suggest that even if we had told the district court, don't consider new circumstances, you're saying the district court would have been obliged to, even if we said don't? Well, if the court gave that kind of instruction, I guess it would have been good. And then I guess my question is, because we didn't, and if we followed the language of Crosby, and if there's binding precedent from this court that when you do a Crosby remand, you may not consider post-sentencing rehabilitation, why would that be error? Okay, well, Crosby might be in conflict with Bryson. And if this court wanted to make a Crosby remand, could have cited Crosby and say... What if we used the identical language to Crosby and didn't cite it? Pardon me, Judge? What if we used the identical, the precise language used in Crosby, but we did not cite Crosby? Does that strip our ability? I guess that would be good. Okay, but you haven't read Crosby recently. Not recently, no. So you don't know whether our language was consistent with Crosby or not? Well, maybe I'm wrong. I don't know. But we did not fill in this issue to the Supreme Court. So there are more than just the Bryson case. I would encourage the court to just reconcile these cases because if Crosby says do not consider post-release rehabilitation, or post-sentencing rehabilitation, then there's something that has to be resolved between those cases and Crosby, the language of Crosby. Because in this case, this is not something that was decided just because it was a post-offer. It was decided long after that. And I would submit to the court it must remand with instructions in order to be brought back to the district and have access to the updated pre-sentence report and consider any relevant submissions that the defendant makes concerning post-sentencing rehabilitation, which would be, and I believe that that would be, within the spirit of remanding. Thank you very much. Thank you both, and we will take the matter under advisement. That concludes our argued docket this morning, so I will ask the clerk to adjourn. Thank you. Thank you.